```
              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    Alexandria Division

MONTBLANC-SIMPLO GmbH,            )
     Plaintiff,                   )
                                  )
           v.                     )   Civil Action No. 1:13cv1137
                                  )
BUYMONTBLANCPENSCA.NET, et al.,   )
     Defendants.                  )
                                  )
```

REPORT AND RECOMMENDATION

This matter comes before the Court on plaintiff's Motion for Default Judgment. (Dkt. 10.) After a representative for defendants failed to respond to plaintiff's Motion or to appear at the hearing on December 6, 2013, the undersigned took plaintiff's Motion under advisement.[1]

I.   INTRODUCTION

On September 11, 2013, plaintiff Montblanc-Simplo GmbH ("plaintiff") filed its Complaint action in rem against 126 domain names ("Infringing Domain Names" or "defendants"). (Compl. ¶ 1.) Plaintiff alleges that the 126 identified Infringing Domain Names are confusingly similar to plaintiff's MONTBLANC trademarks and seeking relief under the Anti-

---

[1] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), the First Declaration of Martin B. Schwimmer (Dkt. 4-1), the Declaration of John Jennison (Dkt. 7), the Declaration of Martin B. Schwimmer in Support of Plaintiff Montblanc-Simplo GmbH's Request for Entry of Default (Dkt. 8-2), the Motion for Entry of Default Judgment ("Mot. Default J.") (Dkt. 10), and plaintiff's Memorandum in Support of Motion for Default Judgment ("Mem. Supp. Mot. Default J.") (Dkt. 11).

1

Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (2006) ("ACPA"). (Id.) Plaintiff now seeks default judgment against the defendants in rem and a permanent injunction directing that ownership of the Infringing Domain Names be transferred to plaintiff. (Mem. Supp. Mot. Default J. 1.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1338(a) because it involves a federal question arising under the ACPA, 15 U.S.C. § 1125(d).

This Court has in rem jurisdiction over the Infringing Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A) because plaintiff has alleged violations of its registered trademarks, and because plaintiff is unable to obtain personal jurisdiction over the registrants of the Infringing Domain Names.

Venue is proper in this District under 15 U.S.C. § 1125(d)(2)(C) because the registries for the Infringing Domain Names—VeriSign Inc., Public Interest Registry, and Neustar—are located in this District. (Compl. ¶ 10.)

### B. Service of Process

A plaintiff filing an action under the ACPA must provide notice of the action to the owner/registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). Sufficient notice of an in rem action is established if the Court finds that the owner (1) is not able to obtain in personam

2

jurisdiction over a person who would have been a defendant, in this case the registrant; and, (2) through due diligence was not able to find a person who would have been a defendant by both (a) sending notice of the violation and intent to bring this action to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar, and (b) publishing notice of the action as the Court may direct after filing the action.  Id. § 1125(d)(2)(A)(ii).

The undersigned concludes that plaintiff cannot obtain in personam jurisdiction over the registrants of the Infringing Domain Names.  The registrants of the Infringing Domain Names are putatively located in or around China.  (Compl. ¶ 9.)  Furthermore, the contact information listed for most, if not all, of these defendants is false, incomplete, and/or fictitious.  (Id. at ¶ 10.)  These entities are outside the scope of in personam jurisdiction within the United States and there appears to be no alternative basis for jurisdiction in the United States.  Plaintiff's Complaint thus satisfies the threshold requirement of Section 1125(d)(2)(A)(ii)(I).

Plaintiff also sent a notice of the alleged violation and intent to proceed under the ACPA to the registrants of the Infringing Domain Names at e-mail addresses provided by the registrant to the registrar.  (Declaration of Martin B. Schwimmer (Dkt. 4-1).)  Additionally, on September 17, 2013, the

3

Court entered an Order granting plaintiff's Motion for Service by Publication. (Dkt. 7.) On September 23, 2013, a notice of the action was published in The Washington Times. (Mem. Supp. Mot. Default J. 4; Dkts. 6, 7.) Thus, the requirements of § 1125(d)(2)(A)(ii)(II) have been satisfied, and service of process is deemed complete. 15 U.S.C. § 1125(d)(2)(B).

### C. Grounds for Entry of Default

To date, no party with an interest in the Infringing Domain Names has appeared or otherwise participated in these proceedings. On September 23, 2013, The Washington Times published the notice of this action, informing parties with an interest in the Infringing Domain Names of the need to respond in this case within twenty-one (21) days. (Exs. 7, 7-2.) By November 7, 2013, no party had responded on behalf of the Infringing Domain Names, and plaintiff requested entry of default. (Dkt. 8.) On November 14, 2013, the Clerk of this Court entered default against the Infringing Domain Names. (Dkt. 9.) On November 21, 2013, plaintiff filed its Motion for Default Judgment. (Dkt. 10.) The undersigned held a hearing on plaintiff's Motion on December 6, 2013, at which no representative for the Infringing Domain Names appeared. (Dkt. 13.) Finding this matter uncontested, the undersigned took plaintiff's Motion under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that the plaintiff has established the following facts. Plaintiff Montblanc-Simplo GmbH is a German corporation and has its principal place of business in Hamburg, Germany. (Compl. ¶ 6.) The 126 Infringing Domain Names are registered by various registrants and are putatively located in China. (Id. at ¶ 9.) The domain name registries for the Infringing Domain Names are VeriSign Inc., Public Interest Registry, or Neustar, all of which are located in this District. (Id. at ¶ 10.)

Plaintiff sells "sophisticated, high-quality" products bearing the MONTBLANC brand name in the United States that include writing instruments and accessories, luxury leather goods, jewelry, eyewear, and watches. (Mem. Supp. Mot. Def. J. 2.) Plaintiff has registered various word and stylized design marks for its MONTBLANC brand with the United States Patent and Trademark Office. (Id. at 2-3.) It is the owner of word marks incorporating or containing the name MONTBLANC, including U.S. Trademark Registration Nos. 776,208; 1,825,001; 1,884,842; 2,202,465; 2,415,189; and 2,820,561. (Compl. ¶ 13.) It owns stylized design marks, such as the "Star Design" and "composite MONTBLANC" marks, including Registration Nos. 2,515,092 and 3,059,776. (Id. at ¶ 14.) Several MONTBLANC word and stylized

5

design marks have obtained incontestable status pursuant to 15 U.S.C. § 1065. (Mem. Supp. Mot. Def. J. 2.)

Plaintiff manufactures and distributes products bearing its MONTBLANC marks, and promotes its products and services under its registered MONTBLANC marks. (Id. at ¶¶ 13-14.) Plaintiff uses the MONTBLANC marks to indicate the source of its high-quality products and services. (Id.) Plaintiff sells and advertises its merchandise at the website http://www.montblanc.com. (Id. at ¶ 12.)

The Infringing Domain Names all contain the word "montblanc" combined with various other words. (Id. at ¶ 19.) The generic words adopted in conjunction with the "montblanc" word mark include, but are not limited to, "pen(s)," "discount," "shop," "outlet," "buy," "online," and "fuller" (which means "fountain pen" in German). (Id.) The websites at those domain names offer for sale counterfeit products bearing the MONTBLANC trademark. (Id. at ¶¶ 19-20.)

None of the record owners of the Infringing Domain Names has any trademark or intellectual property rights in the MONTBLANC mark or the domain names for which it is the owner of record. (Id. at ¶¶ 20-21.) Each of the Infringing Domain Names was registered without authorization from the plaintiff, and the plaintiff has not licensed or otherwise permitted any of the record owners of the Infringing Domain Names to use its

6

MONTBLANC mark in connection with the sale of merchandise, or to apply for any domain names similar to the MONTBLANC mark. (Id.) The Infringing Domain Names were registered and used to divert consumers from plaintiff's website to websites accessible under those domain names, for the registrant/owner's commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of those web sites.

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiff's claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

**A. Legal Standard**

The ACPA allows the owner of a mark to file an in rem civil action against a domain name if the domain name violates the owner's trademark rights, and if the owner of the mark satisfies certain procedural provisions. 15 U.S.C. § 1125(d)(2)(A). The procedural provisions include establishing that the Court lacks in personam jurisdiction over the defendants, or that the plaintiff has been unable to locate the defendants through due

diligence. Id. § 1125(d)(2)(A)(ii). In an in rem action, the remedies are limited to forfeiture, cancellation, or transfer of the Infringing Domain Name to the owner of the mark. Id. § 1125(d)(2)(D).

Thus, to be entitled to relief in rem, the owner of a mark must prove a violation of "any right of the owner of a mark registered in the Patent and Trademark Office," or of subsections 1125(a) or (c). Id. § 1125(d)(2)(A)(i). The phrase "any right of the owner of a mark" encompasses claims brought under § 1125(d)(1). Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 224, 228, 232 (4th Cir. 2002).

Plaintiff has elected to seek relief under § 1125(d)(1). That provision creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). Thus, to prevail under § 1125(d)(1), a plaintiff must prove (1) plaintiff's ownership of a valid and protectable mark; (2) defendant's use of a domain name that is "confusingly similar" to plaintiff's mark; and, (3) defendant's bad faith intent to profit from the mark.

### 1. *Plaintiff Possesses a Valid and Protectable Mark*

The undersigned finds that the plaintiff has sufficiently pled protectable rights in the trademarks alleged in the

Complaint. Plaintiff has used the MONTBLANC mark extensively in the United States and worldwide in connection with its products. (Compl. ¶¶ 11-14.) In addition, plaintiff registered its MONTBLANC marks with the United States Patent and Trademark Office. (Id. at ¶¶ 13-14.) The MONTBLANC mark is a famous mark. Therefore plaintiff is entitled to enforce the provisions of § 1125(d) against any domain name that violates its rights in the MONTBLANC mark.

## 2. *The Infringing Domain Names are Confusingly Similar*

The undersigned also finds that plaintiff's Complaint pleads facts showing that the Infringing Domain Names are confusingly similar to the MONTBLANC mark, and that the registration of those domain names was likely to result in damage to the plaintiff. The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. See Agri-Supply Co. v. Agrisupply.com, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006). The Infringing Domain Names are combinations of word "montblanc" with various other words and numbers. These websites, competitors of the plaintiff's montblanc.com site, create a likelihood of confusion.

## 3. *Defendants Have Acted with a Bad Faith Intent*

Finally, the undersigned also finds that plaintiff's Complaint pleads facts evidencing defendants' bad faith intent to profit from plaintiff's MONTBLANC mark. Under the ACPA, bad

9

faith intent may be evidenced by weighing nine non-exhaustive factors. Id. §§ 1125(d)(1)(B)(i). "The factors are given to courts as a guide" and need not be exhaustively considered in every case. Lamparello v. Falwell, 420 F.3d 309, 319-20 (4th Cir. 2005). In relevant part, the factors supporting a finding of a bad faith include: a defendant's intellectual property rights in the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (V), (VII).

Based on these factors, the undersigned finds that the defendants have acted with a bad faith intent to profit from plaintiff's mark in violation of the ACPA. They have no intellectual property rights in the Infringing Domain Names. (Compl. ¶ 20.) The websites at those domain names generally offer and sell counterfeit products to the consuming public under the MONTBLANC marks. (Id. at ¶¶ 19-21.) The goods offered at the Infringing Domain Names' sites are confusingly similar to that available at plaintiff's www.montblanc.com site. (Id. at ¶¶ 2, 19.) This evidences intent to divert consumers from plaintiff's site in a way that could tarnish the goodwill represented by plaintiff's MONTBLANC mark. Finally, defendants

10

supplied false contact information when registering the Infringing Domain Names, thus demonstrating a bad faith intent to profit from plaintiff's MONTBLANC mark. (Id. at ¶ 10.)

### B. Conclusion

Because the remaining procedural provisions of 15 U.S.C. § 1125(d) have been satisfied, see supra pp. 2-4, the Court may order the forfeiture or cancellation of the Infringing Domain Names or the transfer of the domain names to the owner of the MONTBLANC mark – the plaintiff. 15 U.S.C. § 1125(d)(2)(D)(i).

### IV. REQUESTED RELIEF

The plaintiff seeks an injunction under 15 U.S.C. § 1125(d) ordering domain name registries VeriSign Inc., Public Interest Registry, and Neustar to transfer each of the Infringing Domain Names to Com Laude, and ordering that Com Laude register the Infringing Domain Names in the name of plaintiff's parent company, Richemont International, Ltd., or any other entity within Richemont's control for proper administration of the same.

### V. RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of the plaintiff with respect to the Infringing Domain Names for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned further recommends that VeriSign Inc.,

11

Public Interest Registry, and Neustar be required to transfer each of the Infringing Domain Names from their current registry to Com Laude pursuant to 15 U.S.C. § 1125(d)(1)(C).  And finally, the undersigned recommends that Com Laude be required to register the transferred Infringing Domain Names in the name of Montblanc's parent company, Richemont International, Ltd., or any other such entity of plaintiff's choosing.

## VI.  NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

                                                                                            /s/
                                        THERESA CARROLL BUCHANAN
                                        UNITED STATES MAGISTRATE JUDGE

December 11, 2013
Alexandria, Virginia